# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DESMOND W. THOMPSON,        )
                          )
         Petitioner,          )
                          )
     vs.                   )     CV NO. 10-718 JC/CG
                          )     CR NO. 09-489 JC
UNITED STATES OF AMERICA,    )
                          )
         Respondent.     )

## PROPOSED FINDING AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Desmond W. Thompson's *Motion to Vacate, Set-Aside or Correct Sentence Pursuant to Title 28 U.S.C. § 2255* ('Petition') (Doc. 1), *Respondent's Response to Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody* ('Response') (Doc. 5), Petitioner's *Movant Traverse to the Respondent's Response to his Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Prisoner in Federal Custody* ('Reply') (Doc. 6), and *Petitioner's Supplemental Brief* ('Brief') (Doc. 12).

Petitioner claims that his sentence is unconstitutional, that his guilty plea was coerced, and that he received ineffective assistance of counsel after his attorney failed to seek a downward departure at sentencing or to file a requested appeal. (Doc. 1 at 1-6). Respondent contends that Petitioner has not shown that his attorney was ineffective, that his plea agreement was not coerced, and that he should be held to the appellate waiver which he agreed to in his plea agreement. (Doc. 5 at 5-13). For the reasons outlined below, the Court **RECOMMENDS** that the Petition be **DISMISSED WITH PREJUDICE**.

I.      **Factual and Procedural Background**

On February 1, 2009, Sgt. Ramos of the New Mexico State Police was driving westbound on I-40 when he saw a white car driving 79 miles per hour in a 75 mile per hour zone. (Doc. 1 at 2; 09-cr-489, Doc. 40 at 4). Petitioner was the driver of the car. Sgt. Ramos pulled the car over and immediately noticed a strong smell of liquid detergent as he approached the passenger side of the car. (09-cr-489, Doc. 40 at 4). Petitioner provided a New York commercial driver's license and explained that the car had been rented in California the day before. (*Id.*). Petitioner told the officer that he had been visiting family and a girlfriend in California for the past several weeks. (Doc. 1 at 3). The rental agreement provided that the car needed to be returned in New York on February 3, only two days later. (09-cr-489, Doc. 40 at 4). The officer became suspicious because Petitioner was only carrying one small bag, which did not support the "couple weeks" trip that Plaintiff described. (*Id.*). The officer also found the short turnaround between the rental of the car and its return date in New York as well as the "overpowering" detergent smell - which is sometimes used to mask the smell of drugs - to be suspicious. (*Id.*).

Sgt. Ramos issued a speeding citation and told Petitioner that he was free to go. (*Id.* at 5). However, before Petitioner was able to leave, Sgt. Ramos asked if he could search the car to see if there were any guns, drugs, or money hidden within. (*Id.*). The government alleges - as laid out in the narrative in Petitioner's plea agreement - that Petitioner consented to the search and that he signed a written consent form. (*Id.*). Petitioner claims that the officer forced him to sign the form, threatening that if Petitioner did not sign, Petitioner "would never see New York again." (Doc. 1 at 4). Sgt. Ramos then searched the trunk of the car and, after inspecting and cutting open the spare tire in the trunk, he found

several bundles of suspected cocaine and cocaine base wrapped in green cellophane packaging. (*Id.* at 5-6). More bundles were then found hidden under the center console of the car. (*Id.* at 6). The total weight of the drugs amounted to 5.60 kilograms of powder cocaine and 135.1 gross grams of cocaine base. (*Id.*).

Petitioner was indicted on February 26, 2009, on one count of possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), and one count of possession with intent to distribute 50 grams or more of cocaine base in violation of  21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), both of which carried a mandatory ten year prison sentence.[1] (*See* 09-cr-489, Doc. 11). Petitioner eventually entered into a plea agreement with the U.S. Attorney's Office wherein he agreed to plead guilty to both counts of the indictment. (*See* 09-cr-489, Doc. 40). The parties agreed to a sentence of 120 months, the statutory minimum allowed under 28 U.S.C. § 841(b)(1)(A). (*Id.* at 3). Under the plea agreement, Petitioner was not allowed to seek a downward departure from the agreed sentence. (*Id.*). The plea agreement also contained the foregoing waiver of appellate rights:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a Defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence imposed pursuant to this agreement. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) pursuant to 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

(09-cr-489 , Doc. 40 at 7).

Petitioner pled guilty before United States Magistrate Judge Alan C. Torgerson on

---

[1] Congress recently amended 21 U.S.C. § 841(b)(1)(A)(iii) in 2010. Currently, § 841(b)(1)(A)(iii) forbids the possession with intent to distribute of 280 grams of cocaine base, as opposed to 50 grams of cocaine base. *See* Pub. L. 111-220 § 2(a)(1) (2010).

October 9, 2009. (09-cr-489, Doc. 50). In accepting the plea, Judge Torgerson engaged Petitioner in an extended plea colloquy. Specifically, Judge Torgerson inquired whether Petitioner understood the plea agreement, whether he had reviewed it with his attorney, whether he was satisfied both with this attorney's services and with the content of the plea agreement, and whether Petitioner had agreed to the plea agreement freely and voluntarily. (*Id.* at 7-14). Petitioner answered each question in the affirmative. (*Id.*).

Following his guilty plea, a pre-sentence report ("PSR") was prepared. Based on the nature of the crimes alleged in the indictment, the base offense level was determined to be 32. (Doc. 5 at 4). Due to Petitioner's violent criminal history, which included convictions for manslaughter and assault, Petitioner's criminal history category was calculated at level III. (*Id.*). With a criminal history category of III and an offense level of 32, the sentencing guideline range would have been 151-188 months. (*Id.* at 4-5). However, due to his guilty plea, Petitioner received a three level reduction to his base offense level for acceptance of responsibility. (*Id.* at 4). Based on an offense level of 29, Petitioner's guideline range was reduced to 120-135 months. (*Id.*).[2]

Petitioner was sentenced by United States District Judge John E. Conway on February 3, 2010. (09-cr-489, Doc. 45). As per the terms of the plea agreement, Petitioner was sentenced to 120 months imprisonment and five years of supervised release on each count of the indictment. (*Id.* at 2-3). The terms were to run concurrently. (*Id.*). Petitioner did not directly appeal his conviction. Petitioner filed the instant *Motion to Vacate, Set-Aside*

---

[2] A base offense level of 29 with a criminal history category of III actually results in a guidelines range of 108-135 months. (Doc. 5 at 4). However, because Petitioner was facing a mandatory minimum sentence of 120 months under 21 U.S.C. § 841, the guideline range was calculated at 120-135 months. (*Id.*).

*or Correct Sentence Pursuant to Title 28 U.S.C. § 2255* on July 30, 2010. (Doc. 1).

Upon a review of the Petition, the Response, and the Reply, the Court determined that the allegations regarding counsel's purported failure to file a requested appeal raised unsettled questions of law and fact. (Doc. 8). The Court recommended that counsel be appointed to represent Petitioner and an evidentiary hearing was held on July 29, 2011, to consider that specific allegation. (*Id.* at 4-7; Doc. 21).

**II.**   **Standard of Review**

   **i.**   **28 U.S.C. § 2255**

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). A district court may grant relief under § 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

Mr. Thompson's *pro se* Petition, as well as his reply to the government's response, must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is not required to fashion a *pro se* litigant's arguments for her where her allegations are conclusory and lack supporting factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall*, 935 F.2d at 1110).

### ii.   <u>Ineffective Assistance of Counsel</u>

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, she must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). In considering the two-prong *Strickland* test, the Court may proceed directly to the prejudice prong of the analysis if that is more convenient. *Id.* at 697 ("If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is easier to resolve.").

### III.   <u>Analysis</u>

Petitioner raises a number of claims: (i) that his sentence was contrary to the

Supreme Court's ruling in *Apprendi v. New York*, 530 U.S. 466 (2000), (ii) that he did not enter his plea knowingly and intelligently, (iii) that his attorney failed to request a below-guidelines sentence at the sentencing hearing, and, (iv) that he received ineffective assistance of counsel because he instructed his attorney to file an appeal and his attorney ignored his explicit request. (Doc. 1 at 1-6). The Court will address each argument in turn.

      a.    **<u>Apprendi Claim</u>**

Petitioner claims that his sentence was "severely enhanced on account of the District Court incorrectly calculating the drug quantity [found in the car]." (Doc. 1 at 6). Petitioner appears to argue that this error is in violation of *Apprendi v. New York*, 530 U.S. 466 (2000). (*Id.* at 2).

In *Apprendi*, the United States Supreme Court ruled that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In this case, the statutory maximum sentence Petitioner could have received on either count of the indictment was life in prison. 21 U.S.C. § 841(b)(1)(A)(ii)(II), (iii). Petitioner's sentence of 120 months did not exceed the statutory maximum. Additionally, the Tenth Circuit has held that *Apprendi* does not apply to drug prosecutions when the defendant pleads guilty and the sentence is based on the drug quantity alleged in the indictment. *See United States v. Lujan*, 268 F.3d 965, 968-69 (10th Cir. 2001); *see also United States v. Booker*, 543 U.S. 220, 244 (2005) (recognizing that *Apprendi* does not apply where the facts are admitted by the Defendant). Therefore, Petitioner's *Apprendi* claim will be dismissed.

### b.   <u>Voluntariness of Plea</u>

Petitioner claims that his guilty plea was coerced and that he "did not knowingly intelligently stipulate[ ] to a set o[f] binding 120 months . . ." (Doc. 1 at 4-5). Petitioner provides no further support for his claim that he was coerced into pleading guilty. Respondent claims that Petitioner has not provided any facts to support this allegation and that it must be dismissed. (Doc. 5 at 12-13). The Court concurs.

In every habeas case, the Petitioner must "specify all the grounds for relief available" and "state the facts supporting each ground." RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. The factual allegations must be "specific and particularized, not general or conclusory." *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995). This is particularly true in this instance since a defendant who "has made an affirmation of voluntariness and has pled guilty . . . carries a heavy burden in subsequently claiming that his plea was involuntary." *United States v. Wright,* 43 F.3d 491, 497 (10th Cir. 1994) (quoting *United States v. Whalen*, 976 F.3d 1346, 1348 (10th Cir. 1992)). Petitioner has presented no facts or legal analysis to support his claim that he was coerced into pleading guilty. He has therefore failed to show that he is entitled to relief on this claim. *See, e.g.*, *Walker v. Gibson*, 228 F.3d 1217, 1240 (10th Cir. 2000) (holding that "unsupported and undeveloped issues" do not entitle a habeas Petitioner to relief) (quoting *Moore v. Gibson*, 195 F.3d 1152, 1180 n. 17 (10th Cir. 1999)) (internal quotations omitted), *abrogated on other grounds by Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001).

### c.   <u>Failure to Seek a Downward Departure</u>

While the Petition is not entirely clear, Petitioner appears to claim that he asked his

trial attorney, Richard Winterbottom, to request a below-guidelines sentence at the sentencing hearing due to the disparate treatment of crack and powder cocaine. (Doc. 1 at 6). Mr. Winterbottom did not seek a downward departure at sentencing.

At the time of Petitioner's sentencing, the sentencing ratio of crack cocaine to powder cocaine was 100 to 1. *Compare* 21 U.S.C. § 841(b)(1)(A)(ii)(II) *with* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii).  "In other words, for purposes of drug quantities for sentencing under the guidelines, one gram of crack triggered the same mandatory penalties as one hundred grams of powder cocaine." *United States v. Lewis*, 625 F.3d 1224, 1226 (10th Cir. 2010). Nevertheless, Mr. Winterbottom's decision not to request a below-guidelines sentence was not unreasonable and did not constitute ineffective assistance of counsel.

When he entered into the plea agreement, Petitioner agreed to give up his right to seek a downward departure from the agreed-upon sentence of 120 months. (09-cr-489, Doc. 40 at 3 ("Defendant further understands that the agreed upon sentence is the final sentence, and the Defendant may not seek a downward departure, variance, or deviation of any kind from the agreed upon sentence.")). As noted above, Petitioner has not alleged any facts which would support a claim that he did not enter into the plea agreement knowingly and voluntarily. Furthermore, Petitioner's received the minimum sentence allowed under the 21 U.S.C. § 841(b)(1)(A). Therefore, Mr. Winterbottom was precluded from requesting a downward departure.[3]

---

[3] The Court notes that Petitioner was not eligible for a "safety valve" exception which would have permitted the district court to impose a sentence lower than the statutory minimum because Petitioner had more than 1 criminal history point. *See* USGC § 5C1.2(a)(1). Therefore, the district court could not impose a sentence below the statutory minimum. *See* USGC § 5G1.1(c)(2).

d.  **Failure to File a Requested Appeal**

Petitioner's contends that Mr. Winterbottom failed to file a requested appeal following his conviction. (Doc. 1 at 5-6; Doc. 6 at 2-4). Citing to the United States Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (200), Petitioner argues that Mr. Winterbottom's failure to file the appeal constitutes ineffective assistance of counsel. (Doc. 1 at 5-6; Doc. 6 at 2-3). Due to this failure, Petitioner believes that he is entitled to directly appeal his conviction to the Tenth Circuit so that he can receive a "proper sentence." (Doc. 1 at 5-6; Doc. 6 at 2).

Respondent argues that there is no factual basis to support the claim that he actually instructed Mr. Winterbottom to file an appeal. (Doc. 5 at 7-9). Alternatively, Respondent argues that this claim should be dismissed because Petitioner waived his right to appeal and that he should be held to this waiver. (*Id.* at 9-13). The Court found that Petitioner's allegations regarding the requested appeal raised unsettled questions of law. (Doc. 8 at 4-7). Counsel was appointed to represent Petitioner and, after consideration of a *Supplement Brief* prepared by Petitioner's appointed counsel, an evidentiary hearing was held on July 29, 2011, to determine whether Petitioner had asked Mr. Winterbottom to file an appeal. (Doc. 12, Doc. 14; Doc. 21). Petitioner and Mr. Winterbottom were the sole witnesses at the hearing.

i.  **Petitioner's Testimony**

Petitioner testified that he expressly asked Mr. Winterbottom to file an appeal on two separate occasions. (Doc. 21 at 8). Petitioner first requested an appeal after he had pled guilty. (*Id.*). Petitioner made the request in person when Mr. Winterbottom visited him at the

Regional Correctional Center prior to sentencing. (*Id.*) The second request occurred on the day of the sentencing hearing, but before the hearing had begun. (*Id.*). Petitioner claims that Mr. Winterbottom said he would "take care of it[,]" though it is not clear whether Mr. Winterbottom said this on both occasions or only once. (*Id.* at 7). Petitioner never submitted any written request for an appeal to Mr. Winterbottom. (*Id.* at 8).

On cross-examination, Petitioner maintained that he had asked Mr. Winterbottom to file an appeal, but he was not clear on what basis he wanted to appeal. In response to questions by both Respondent and the Court, Petitioner stated that he was seeking to appeal "my whole case", "the whole thing", and "the submissions that I had in my case." (*Id.* at 22-3).

Petitioner admitted that Mr. Winterbottom went over the plea agreement and the PSR with him, both of which referenced Petitioner's waiver of appellate rights. (*Id.* at 17-19, 24-25). He did not recall whether he and Mr. Winterbottom discussed the appellate waiver. (*Id.* at 18-19). Respondent introduced a letter written by Mr. Winterbottom to Petitioner on February 4, 2009, only one day after the sentencing. (*Id.* at 9). The letter explained to Petitioner the effect of his sentence and the second paragraph of the letter explicitly mentioned that Petitioner had given up his right to appeal. (*Id.* at 25-27). Petitioner spoke with Mr. Winterbottom several times after receiving the letter, but he never asked about an appeal, nor did he raise any concerns about Mr. Winterbottom's reference to his appellate waiver. (*Id.*).

### ii.  **Mr. Winterbottom's Testimony**

Mr. Winterbottom testified that he has been an Assistant Federal Public Defender for the past eleven years and that he had worked as a criminal defense attorney for over

thirty years. (*Id.* at 30). He has never been found to have provided ineffective assistance of counsel. (*Id.* at 42-43). He testified that he went over the plea agreement with Petitioner and he felt that Petitioner understood the terms of the agreement as well as the advantages and disadvantages of the agreement. (*Id.* at 33-34). Mr. Winterbottom discussed the appellate waiver with Petitioner and he explained what rights Petitioner was relinquishing. (*Id.* at 34-35).

Mr. Winterbottom had no recollection of Petitioner ever asking him to file an appeal. (*Id.* at 36). On several occasions, Mr. Winterbottom agreed that, considering the nature of the plea agreement and the appellate waiver, any request for an appeal would have been a "red flag" and "a little disconcerting" to him. (*Id.* at 36-37). Mr. Winterbottom felt certain that he would have remembered such a request and would have made a note of it in Petitioner's file. (*Id.* at 36-39, 44-45). Mr. Winterbottom spoke with Petitioner many times after sentencing and Petitioner never mentioned that he wanted to appeal. (*Id.* at 38). While Mr. Winterbottom did not believe that Petitioner's case presented any meritorious issues for appeal, he testified that he would have filed an appeal if Petitioner had asked him to. (*Id.* at 44-45).

On cross-examination, Mr. Winterbottom admitted that, while he had no recollection of Petitioner requesting an appeal, it was possible that Petitioner had done so. (*Id.* at 47). He admitted that he had neglected to sign the February letter to Petitioner, even though it was his usual practice to sign his post-sentencing letters.  (*Id.* at 47-48).

### iii.   **Discussion**

After carefully observing both witness' demeanor, and reviewing the testimony and documentary evidence presented during the hearing, the Court finds that Petitioner's

12

allegation that he instructed Mr. Winterbottom to file an appeal is not credible. Petitioner claims that he twice asked Mr. Winterbottom to file an appeal, but both those occasions occurred *before* he had been sentenced and, therefore, before he could have known what issues he wanted to appeal. Furthermore, when asked by Respondent and the Court what issues he asked Mr. Winterbottom to appeal, Petitioner could not provide a clear answer, claiming only that he wanted to appeal "my whole case", "the whole thing", and "the submissions that I had in my case." (Doc. 21 at 22-3). Petitioner's claim that Mr. Winterbottom said he would "take care of it" is incredible considering that Petitioner had not yet been sentenced and therefore could not know what the basis of his appeal would be.

Petitioner's claim is further contradicted by the February letter where Mr. Winterbottom explicitly referenced Petitioner's waiver of his appellate rights.[4] The letter would suggest that Mr. Winterbottom believed that Petitioner had no option to pursue an appeal. Petitioner argues that the letter actually supports his claim that Mr. Winterbottom either forgot or ignored his request for an appeal because Mr. Winterbottom's failure to sign the letter suggests that Mr. Winterbottom did not follow his usual practices in Petitioner's case. (Doc. 22 at 3, 5-6). The Court is not persuaded. Mr. Winterbottom's failure to sign the letter was a minor omission, and does not support a conclusion that Mr. Winterbottom ignored two explicit requests to file an appeal.  In any event, regardless of whether Mr.

---

[4] The Court rightly overruled Petitioner's objection to the admission of the February letter on the grounds of relevance. Under Federal Rule of Evidence 401, evidence is relevant if it tends to a make a material fact more probable or less probable than it would be without the evidence. FED. R. EVID. 401. "As for the degree of probative value required under Rule 401, the rule sets the bar very low." *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998). In this case, the fact that Mr. Winterbottom sent Petitioner a letter explaining that he had waived his right to appeal was certainly relevant to the question of whether Mr. Winterbottom was aware that Petitioner wanted to appeal his conviction.

Wintberbottom signed the letter or not, it should have alerted Petitioner to the fact that Mr. Winterbottom was not pursuing an appeal. Yet Petitioner testified that he did not raise any concerns regarding the letter or the appeal that he thought Mr. Winterbottom was preparing. (*Ia.* at 25-27). The Court finds this testimony inconsistent with Petitioner's claim that he asked that an appeal be filed.

In contrast, the Court finds Mr. Winterbottom's testimony to be credible. To the best of Mr. Winterbottom's recollection, Petitioner never asked for an appeal to be filed. (*Id.* at 36). Petitioner argues that this testimony supports his claim because Mr. Winterbottom never expressly denied that Petitioner asked him to file an appeal, only that he had no recollection of such a request. (Doc. 22 at 3, 5-6). However, Petitioner ignores the full breadth of the testimony. Mr. Winterbottom stated that, because Petitioner pled guilty and agreed to an appellate waiver, he would have been surprised by a request to file an appeal and he felt certain he would have remembered such a request. (Doc. 21 at 36-39, 44-45). He was also certain that he would have made a note of it in the case file. (*Id.*). The fact that Mr. Winterbottom has no recollection of Petitioner requesting that he file an appeal, much less two requests, suggests that the request was never made. The February letter corroborates Mr. Winterbottom's testimony since the letter makes no mention of a request to file an appeal and, in fact, reminds Petitioner that he waived that right. Mr. Winterbottom spoke with Petitioner multiple times following sentencing and Petitioner never asked about an appeal or referenced his purported appeal requests. (*Id.* at 38). Furthermore, Mr. Winterbottom would have had no reason to ignore or disobey a request to file an appeal as he testified that he would have filed an appeal had Petitioner requested one. (*Id.* at 45-46).

14

The testimony and supporting evidence presented at the evidentiary hearing has convinced the Court that Petitioner never informed Mr. Winterbottom that he wanted to file an appeal. Therefore, the Court finds that Mr. Winterbottom's performance as counsel was not deficient and that Petitioner's allegation of ineffective assistance of counsel is without merit.

## IV.   Recommendation

For the reasons outlined in the foregoing opinion, the Court **RECOMMENDS** that Petitioner Desmond W. Thompson's *Motion to Vacate, Set-Aside or Correct Sentence Pursuant to Title 28 U.S.C. § 2255*, (Doc. 1), be **DISMISSED WITH PREJUDICE**.

The Court **FURTHER RECOMMENDS** that a certificate of appealability be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE